UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 1:07-mj-00553 |
| v. | ) | The Hon. John M. Facciola |
| | ) | Sentencing Date:  March 31, 2008 |
| LAWRENCE LEWIS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**LAWRENCE LEWIS' MEMORANDUM IN AID OF SENTENCING AND
INCORPORATED POSITION WITH RESPECT TO SENTENCING FACTORS**

Defendant, Lawrence Lewis, through undersigned counsel, hereby files this memorandum in anticipation of sentencing on March 31, 2008, and in support of the Defendant's unopposed request that he be sentenced to a term of straight probation.  Mr. Lewis, who is 57 years old and has no prior criminal record, pleaded guilty on December 10, 2007 to a single misdemeanor count of violating the Clean Water Act, 33 U.S.C. §§1311(a), 1319(c)(1)(A).  The advisory sentencing guideline calculation is undisputed by the government and places the defendant at offense level 8, criminal history I.[1]  Thus, the defendant is eligible for this unopposed sentence of straight probation under the advisory Guidelines and the sentence is equally compelled by a full analysis of the 18 U.S.C. § 3553(a) factors.

---

[1] The PSI calculates the offense level as a 10 but notes the potential applicability of a downward departure pursuant to U.S.S.G § 2Q1.3, comment. (n.3).  PSR ¶ 77.  As noted below and as agreed to by the government, such a departure is appropriate in this case given that Mr. Lewis did not realize that the waste water would flow directly into Rock Creek.

1

## INTRODUCTION AND PERSONAL BACKGROUND

Mr. Lewis, who was born in Washington, D.C., resides in Bowie, Maryland with his two teenage daughters and 91 year old mother. He has sole custody of both his daughters and is the primary care taker for his elderly mother. He has no prior criminal convictions.

Mr. Lewis had one sister and three brothers, all of whom are deceased. All three of his brothers were victims of homicide at a young age (mid-twenties) and all three deaths occurred within a few years of each other (1969, 1971 and 1971). Although this turmoil would be insurmountable to some, Mr. Lewis drew strength from it and became a more spiritual and focused individual. He worked hard and was promoted continuously throughout his career. For example, Mr. Lewis, armed with only a high school diploma, began working for the District of Columbia's Board of Education (hereinafter "Board of Ed.") as a janitor in 1969. This was an entry level position that paid $1.80 an hour. However, in an effort to advance his career, Mr. Lewis took facilities management classes at night and was able to attain the position of Facility Manager, earning $48,000 a year, before he left the Board of Ed in 1993.

After his 24 years working with the Department of Ed., Mr. Mr. Lewis provided engineering, preventative maintenance and facilities management services as a private consultant between 1993 and 1995. From 1995 to 2004, Mr. Lewis was employed as a quality control manager for a government contractor in Alexandria, Virginia. Since 2004, Mr. Lewis has been the Director of Engineering at Knollwood, a retirement facility in the District of Columbia. In that position, Mr. Lewis is responsible for overseeing the physical plant management of the retirement home.

Although Mr. Lewis is a hard worker and has succeeded in his career, he is dedicated to his family above all else. He has court-ordered, sole custody of his two teenage daughters, \_\_\_\_ and _____.[2] When Mr. Lewis separated from his daughters' mother nine years ago, both girls chose to live with him instead of their mother. _____ and \_\_\_\_\_ attend school in Prince George's County, Maryland and are members of the honor roll. The three spend a significant amount of time together and are very close. In addition to providing for his two daughters, Mr. Lewis is the primary caretaker for his 91 year old mother, Nancy Lewis. Mrs. Lewis has lived with Mr. Lewis for more than 20 years.

Consistent with his values and sense of responsibility, both of which have contributed to his successful professional and personal life, Mr. Lewis accepted responsibility for his conduct in this case very early, despite the fact that his conduct was unintentional. Mr. Lewis incorrectly believed the waste water was going to the public water treatment plant in the District of Columbia, not into Rock Creek. In addition to accepting full responsibility, after Mr. Lewis learned where the water was actually going, and before he obtained counsel in this case, he signed up for two, voluntary EPA classes so that he would be equipped with the necessary knowledge to avoid any potential future violations of the environmental laws and regulations.

**THE OFFENSE**

Mr. Lewis was the Director of Engineering at Knollwood at the time of this offense. He is a licensed Class I Steam Engineer, but had no prior training on environmental issues. Part of his responsibilities at Knollwood include overseeing the operation and management of the facility's waste treatment system. Unfortunately, the facility experiences relatively frequent problems with waste water back-up and flooding because many senior citizens residing there

---

[2] The names of the minor children have been redacted. *See* Local Civil Rule 5.4(f)(2).

mistakenly flush down the toilet things like adult diapers which get caught in the pipes, clog the system and can cause the waste water to overflow on the bottom floor of the building. Mr. Lewis has always been extremely sensitive to this issue because the floor which experiences the flooding is also the floor on which the critically ill patients are housed. If the flooding is not controlled quickly, the water could run into these patients' rooms and pose a threat to their health and safety.

In order to protect these patients, when the waste water would back-up and start to flood, Mr. Lewis would direct or authorize employees to pump the water out of the bottom floor into the facility's driveway. The driveway is on a slight slope and towards the bottom of that slope is a drain. Mr. Lewis incorrectly believed that this drain was connected to the facility's waste water sewage system. In other words, he assumed that the waste water going down this drain merged with all of the other waste water coming out of the facility and, ultimately, flowed to the District of Columbia's water treatment plant at Blue Plains. As previously noted, he had no idea the water was going from the drain into Rock Creek.

On March 29, 2007, Knollwood experienced another waste water back-up. Mr. Lewis authorized his employees to pump out the waste water from the floor where the critically ill patients are housed to the driveway behind the facility. When a pedestrian called the police to report the waste water in the Creek, Mr. Lewis learned for the first time that the drain at the bottom of the driveway was a storm drain rather than a sewer drain appropriate for waste water.

Mr. Lewis acted with the best of intentions, although he accepts full responsibility for his mistake. He is very sorry for any damage he caused to the environment and would never have permitted waste water to be disposed of this way if he knew it was going into Rock Creek instead of the sewer system. The irony is that when he was made aware of this problem on March 29th,

he immediately realized that the waste water could be pumped into another pipe carrying waste water from a different part of the building.  This is actually much easier to accomplish and is the way that Knollwood now deals with waste water overflows without causing any damage to the environment.  If he had realized that the driveway drain was a storm drain running directly into the creek, he would have figured out this alternative method much earlier and would not stand before this Court obtaining his first criminal conviction. It is a extremely sad that a man like Mr. Lewis who has overcome such hurdles in his life to become a law-abiding, hard-working, family-oriented and god-fearing man finds himself in the criminal justice system for making such a well-intentioned mistake.

## STATUTORY SENTENCING FACTORS

Section 3553 of Title 18 sets out seven factors to be considered in imposing sentence and directs the Court to impose a sentence that is "sufficient but not greater than necessary." 18 U.S.C. §3553(a).  In this case, consideration of these factors justifies a straight probationary sentence.

(1)     The "nature and circumstances of the offense and the criminal history and characteristics of the defendant" (§3553(a)(1))

As set forth in the preceding section, this factors weighs heavily in favor of the unopposed sentence of straight probation. The misdemeanor offense was committed **unintentionally** by Mr. Lewis for no economic benefit; rather, he simply wanted to protect the critically ill patients at the facility from possible harm.  There is no dispute about the fact that Mr. Lewis did not realize that this particular drain ran into the creek rather than into system carrying the other waste water from Knollwood to the water treatment facility at Blue Plains. Immediately upon finding out that the drain led directly to Rock Creek, Mr. Lewis figured out

5

another way to pump the water out of the facility and into the waste water system (where he thought it was going in the first place).  Then, Mr. Lewis took it upon himself, before hiring counsel, to take two courses with the EPA to ensure that he never again made a mistake like this.

Mr. Lewis's personal characteristics also provide a compelling basis for the requested sentence of straight probation. He's lived his entire adult life without ever running afoul of the law; he's worked hard to achieve success and advancement in his profession; he's dedicated to his family; and he is an excellent father.

(2) "The need for the sentence imposed" (§3553(a)(2))

Here, there can be no question that a probationary sentence would satisfy the "needs" addressed in this subsection.  Given that Mr. Lewis has lived his adult life without any criminal conviction, the crime is non-violent, he received no gain or benefit from the conduct, the seriousness of the offense, respect for the law, just punishment and deterrence do not require a sentence greater than probation.

(3), (4), (5) Available sentences and the Sentencing Guidelines (§3553(a)(3-5)

There is no question that straight probation is authorized by statute, 18 U.S.C. §3561(c)(1), under the terms of the plea agreement, and under the applicable Guideline calculation (including the two point agreed upon departure because the conduct was negligent, not intentional).

With regard to the Guideline calculation, the PSR correctly calculates the offense level at a 10, but notes the potential applicability of a downward departure under U.S.S.G. § 2Q1.3, comment. (n.3).  In this case, the government has agreed that a two point downward departure is appropriate.  As set forth in this commentary, the "specific offense characteristics in this section assume knowing conduct.  In cases (like this one) involving negligent conduct, a downward

6

departure may be warranted." *Id.* Given the particular facts of this case, the invited and agreed-upon modest two-level downward departure could not be more justified. Such a departure would put Mr. Lewis at an offense level of 8 and render him Guideline-eligible for the unopposed sentence of straight probation.

(6)     "The need to avoid unwarranted sentence disparities"

We are not aware that any individual has ever been prosecuted under these particular circumstances. But, to the extent there have been prior cases, it is unimaginable that such an individual did not receive a sentence of straight probation.

(7)     Restitution

The government and the PSR have confirmed that restitution is not an issue in this case.

## CONCLUSION

For the reasons set forth above, Mr. Lewis respectfully requests this court to impose a sentence of straight probation. Such a sentence is appropriate under the advisory sentencing Guidelines and compelled by a full consideration of the factors set forth in 18 U.S.C. § 3553(a).

          Respectfully submitted,

           /s/
          L. Barrett Boss, Esq.
          DC Bar #398100
          COZEN O'CONNOR
          1627 I St., NW
          Suite 1100
          Washington, DC 20006
          (202) 912-4818
          (866) 413-0172 (facsimile)
          bboss@cozen.com

          ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

The foregoing memorandum was served on March 25, 2008 via CM/ECF to:

AUSA Rhonda Campbell
555 4th Street, NW
Washington, DC 20001


and by email to

USPO Kathie McGill
United States Courthouse
333 Constitution Avenue, NW
Washington, DC 20001


           _/s/_____
           L. Barrett Boss